## Case No. 4,398.

**ELLIOTT et al. v. The VOLUNTEER et al.**
[27 Leg. Int. 373; [1] 7 Phila. 568.]

Circuit Court, E. D. Pennsylvania. Nov. 7, 1870.

J. Warren Coulston, for libellants.
M. P. Henry, for the Volunteer.
L. C. Cleeman, for the tug Massey.

McKENNAN, Circuit Judge. This is a case of the collision of vessels navigating the Delaware river in opposite directions. It is not distinguished from cases of its class, by the want of their usual concomitant, much contradictory and irreconcilable testimony. We, however, gather from the whole of it the following facts, which, in our judgment, are satisfactorily proved. On the evening of the 2d of December, 1868, just after dark, the steam tug Lizzie Massey, was proceeding down the Delaware river, having in tow two canal barges laden with coal, which were lashed to her on her starboard and larboard sides respectively, so that their bows projected beyond that of the tug. She carried a green light and a red light on either side of the top of her pilot-house, and a single white light aft on the top of her flag pole. The night was dark, and a mist or haze hung over the water. When she was near the mouth of the river Schuylkill, and on the side of the channel next the Pennsylvania shore, considerably west of the track usually taken by vessels, lights of an approaching steamship were discovered, which proved to be the Volunteer. The latter was "light," had just passed the Fort lighthouse, and was on the eastern side of the channel when she sighted the tug. She blew two whistles, starboarded her helm, changed her course and headed across the channel towards the Pennsylvania shore. The orders were then given in quick succession to slow the engine, hard starboard, stop and back, with a view to get further to the westward. The tug ported her helm, so as to give the approach-

[1] [Reprinted from 27 Leg. Int. 373, by permission.]

ing vessel the whole range of the river to the eastward, but finding that the Volunteer intended to go to the westward, she stopped her engine and backed, thus throwing her partly across the channel. Under these circumstances the collision occurred, the Volunteer first striking the barge on the port side of the tug, and then the one on the starboard side, cutting both down and sinking them immediately.

This statement of the facts is sufficient to show a culpable lack of prudence in the management of the Volunteer. That she had not a proper lookout, or that due vigilance was not observed to sight the tug, is apparent from the facts stated by her pilot, who says when he first saw the light of the tug it was nearly ahead, that he ordered the helm to starboard, which brought the light about a point or a point and a half on the starboard bow, and that he then ordered to slow the engine, hard starboard, stop and back. These orders were given in such quick succession as to show that they must have been almost concurrent with the collision. The light of the tug could not, therefore, have been sighted until the peril of collision was imminent, and, as the result proved, too late to avoid it. In this she was guilty of culpable negligence. The failure to observe the three lights of the tug is no mitigation of this culpability, because, with proper vigilance, they ought to have been seen when the vessels were at such a distance from each other as to enable them to keep out of each other's way, although the Volunteer's witnesses testify, that but one light, indicating a vessel at anchor, was seen by them; even that ought to have been sighted when the vessels were so far from each other, as, with the abundant sea room on the eastern side of the channel which the Volunteer had, to render a collision easily avoidable on her part. But if there was a timely observation of the tug's lights, why was the course of the Volunteer changed? The location of the sunken barges conclusively shows that the tug was on the western side of the channel, and she was pursuing her course, slightly towards the Pennsylvania shore. The Volunteer was light, and the tug encumbered with a tow, and it was clearly the duty of the former to keep out of the way of the latter. The channel was a fourth of a mile wide, and the Volunteer was on the eastern side of it. It is demonstrable then, that if both vessels had kept their course a collision would not have occurred. Joseph B. Moore, a witness for the Volunteer, who saw the barges after they were raised, testifies that the site of the collision was a good deal to the westward of where vessels usually pass. The Volunteer must, therefore, have changed her course across the channel, and have sought to go still further to the westward of the usual track of vessels at that point. To accomplish this her helm was starboarded, which brought her directly across the course the tug was rightfully pursuing, and thus the collision was proximately

caused. For this violation of the sailing regulations prescribed by the act of congress, and for failing to keep on the eastern side of the channel, as well as for not maintaining a proper lookout, she is chargeable with gross fault, and must be held accountable accordingly.

In behalf of the tug it has been earnestly urged, that as she was pursuing a direct course, leaving ample sea room to the east of her for the Volunteer to perform any evolution, and did all that could be done on her part to avoid collision, she ought not to be subjected to any of its penal consequences. But it is conceded she was derelict in carrying two vertical lights, instead of but one, as the act of congress requires; and, as the learned judge of the district court forcibly said, "we cannot with any safety, speculate upon doubts, whether the absence of one of the lights increased the danger of collision." The presumption is, that it did, because, as the duty is imposed by statute as a suitable security for the safety of vessels, it is not an unreasonable inference that congress intended a disregard of it to be considered as contributing to the injury resulting from collision. Certainly, however, the burden of acquitting himself of all responsible censure is upon the delinquent party. How can we say, under the evidence, that the owners of the tug have discharged themselves from this burden? She was in motion, encumbered with a tow, and was bound to inform all vessels navigating the river of this, by the signal prescribed to indicate it, that they might observe the extraordinary caution to avoid collision which the law exacts of them under such circumstances. That the Volunteer was thrown off her guard and fell into the mistake of supposing the tug to be a vessel at anchor, by her exhibition of a single white light, is not at all improbable; indeed, such is the significance of the proofs. This mistake led to the blameworthy attempt of the Volunteer to pass the tug on the starboard side of her, which was followed by the collision. Participation in the Volunteer's fault is therefore imputable to the tug, and she must share in the loss resulting from it.

A decree will be entered against both respondents for the damages adjudged by the district court, and interest from December 2d, 1868, and full costs; the said damages, interest and costs to be divided equally between them, and with leave to apply to the court if occasion should require, touching the enforcement of the decree.